IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADVANTAGE AVIATION TECHNOLOGIES II LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:24-CV-02348-N |
| SOUTHWEST AVIATION SPECIALTIES LLC, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses plaintiff Advantage Aviation Technologies II LLC's ("Advantage") motion to remand [7] and defendant Southwest Aviation Specialties LLC's ("Southwest") motion to dismiss [3]. Because the Court finds that the forum-selection clause ("FSC") at issue is not part of the contract, the Court denies Advantage's motion to remand. Then, the Court concludes that Southwest is not subject to personal jurisdiction in Texas and therefore grants Southwest's motion to dismiss.

## I. ORIGINS OF THE MOTION

This case involves a dispute over a lease of aircraft landing gear. Advantage filed its Original Petition in the 298th District Court of Dallas County, Texas. Notice of Removal 1 [1]. It asserts one cause of action for breach of contract. *Id.* Ex. C ¶¶ 21–30. Then, before Advantage effected service on Southwest, Southwest removed this case on the basis of diversity. *Id.* at 1, 3. Advantage now moves to remand this case to state court based on the contract's FSC, or alternatively because Southwest's removal was untimely.

MEMORANDUM OPINION AND ORDER – PAGE 1

Pl.'s Mot. Remand 6–8 [7].  Additionally, Southwest has moved to dismiss this case for lack of personal jurisdiction and improper venue, or alternatively to transfer this case to the Northern District of Oklahoma.  Def.'s Mot. Dismiss Br. 1 [3].

## II. LEGAL STANDARDS

### A. Remand Standard

A defendant may remove a state court suit only if the action originally could have been brought in federal court.  28 U.S.C. § 1441(a).  The removing defendant bears the burden of establishing federal jurisdiction.  *St. Paul Reins. Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).  The Court must determine whether jurisdiction exists by considering the claims in the plaintiff's state court petition as it existed at the time of removal.  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  If the requirements for federal jurisdiction are not apparent from the plaintiff's state court petition, the removing defendant may present facts and evidence in its notice of removal or by affidavit to establish that jurisdiction existed at the time of removal.  *See Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638–39 (5th Cir. 2003); *see also Gasch ex rel. Z.G. v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 283 n.27 (5th Cir. 2007) (noting that a court considering a motion to remand "may pierce the pleadings and consider summary judgment evidence" (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc); and *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 545 (5th Cir. 2004))).  "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in

MEMORANDUM OPINION AND ORDER – PAGE 2

favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

### B. Personal Jurisdiction Standard

A nonresident defendant is subject to the personal jurisdiction of a federal court if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant and (2) the exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The Texas long-arm statute confers jurisdiction to the limits of the Constitution. *See id.*; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of Constitutional constraints on Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex. App. — Tyler 2001, no pet.).

The Due Process Clause of the Fourteenth Amendment limits the reach of a state court's — and thus a federal court's — jurisdiction over a nonresident defendant. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). Specifically, due process requires that two elements be satisfied. First, the nonresident must have purposefully established "minimum contacts" in the forum state such that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Second, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

MEMORANDUM OPINION AND ORDER – PAGE 3

The minimum contacts analysis required by due process ensures that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "so 'continuous and systematic' as to render [the nonresident] essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Under either a general or specific jurisdiction analysis, however, the "constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Burger King*, 471 U.S. at 474).

A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Id.* at 1192. Whether "the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the

activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

Advantage, as the party seeking to invoke the Court's power, bears the burden of establishing the Court's jurisdiction over a foreign defendant. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (collecting cases). If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts in favor of the plaintiff. *Pervasive Software*, 688 F.3d at 219–20 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson*, 755 F.2d at 1165). "But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

### III. THE COURT DENIES ADVANTAGE'S MOTION TO REMAND

Advantage asserts two reasons why this case should be remanded: (1) the contract has an enforceable FSC effecting a waiver of Southwest's removal rights, and (2) Southwest's removal was untimely. Pl.'s Mot. Remand 1. Reviewing the record, the Court

MEMORANDUM OPINION AND ORDER – PAGE 5

concludes that the FSC here is not part of the contract between the parties. The Court also finds that Southwest's removal was not untimely. Therefore, the Court denies Advantage's motion to remand.

### A. The FSC is Not Part of the Contract

The parties here directly dispute whether the FSC is part of the contract. Def.'s Suppl. Br. 3–5 [23]; Pl.'s Suppl. Br. 3–4 [24]. The relevant facts start with an email from Sana Zubbedi, Advantage's Head of Sales and Marketing, to David Guzman, Southwest's General Manager. In her first email, Zubbedi attached a draft contract on Advantage's letterhead and asks Guzman to "make your edits and send it back." Def.'s Remand Appx., Ex. B [14]. This version included an FSC selecting the "District Court of Dallas County, Texas." *Id.* Guzman responded by listing specific terms that he wanted for the contract including price, deposit amount, and payment schedule. *Id.* Ex. C. He also stated that he attached the "final version of the contract" to his email. *Id.* This "final version" was on Southwest's letterhead, and it included an FSC selecting the "District Court of Tulsa County, Oklahoma." *Id.* However, it did not include the specific terms Guzman wrote in the body of his email. *See id.*

Then, Zubbedi sent a reply email stating "I have the contract attached with the changes you requested." *Id.* Ex. D. This version of the contract did include the terms Guzman requested, but it also had the original Dallas FSC. *See id.* It was signed by Advantage and is the contract that Advantage asserts is the operative agreement in this case. *See id.*; Pl.'s Mot. Remand, Ex. 1. In her email with this version of the contract, Zubbedi requested that Guzman "sign and return" it as well as initial all three pages of the

MEMORANDUM OPINION AND ORDER – PAGE 6

document.   Def.'s Remand Appx., Ex. D.   But neither Guzman, nor anyone else at Southwest, signed or initialed the document.[1]  Then, the parties both proceeded to perform as if a contract were in place.  Southwest shipped the landing gear, and it received payments from Advantage.  Def.'s Mot. Dismiss Appx., Ex. A ¶ 5 [3-2].

From these facts, the Court concludes that the parties created a binding contract, but that contract does not include the FSC.  It is undisputed that the contract at issue in this case is one for a lease of aircraft landing gear.  *See* Pl.'s Mot. Remand 3; Def.'s Mot. Dismiss Br. 1; Pl.'s Mot. Remand, Ex. 1.  Contracts for a lease of goods are governed by certain provisions of the Uniform Commercial Code as codified in the Texas Business and Commerce Code ("the Code").  *See* TEX. BUS. & COM. CODE § 2A.102.  And aircraft landing gear, as movable items, are goods.  *See id.* § 2A.103(a)(8).  Accordingly, this contract is governed by Chapter 2A of the Code.

In the context of *sales* of goods, Chapter 2 of the Code includes a "battle of the forms" rule whereby contradictory or additional terms in an acceptance do not prevent contract formation but are not included in the contract if they materially alter it.  *See id.* § 2.207; *see also Tubelite v. Risica & Sons, Inc.*, 819 S.W.2d 801, 803 (Tex. 1991).  However, there is no analogous provision in Chapter 2A governing leases.  Accordingly, the Court must apply the more general provisions of the Code along with background common law.  *See Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128,

---

[1] Southwest asserts that its signature was not required on the contract, and that that is a reason why it did not notice the altered FSC until Advantage filed this lawsuit.  Def.'s Suppl. Br. 4.

138 (Tex. App. — Houston [1st Dist.] 2015, no pet.) ("To the extent they do not conflict with the Uniform Commercial Code's provisions, common law principles complement the Uniform Commercial Code." (citation omitted)).

Generally, the Code provides that a "lease contract may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of a lease contract." TEX. BUS. & COM. CODE § 2A.204(a). It further provides that even if "one or more terms are left open, a lease contract does not fail for indefiniteness if the parties have intended to make a lease contract and there is a reasonably certain basis for giving an appropriate remedy." *Id.* § 2A.204(c).

Here, the existence of a contract is not in question. Both parties expressly admit that there is a lease contract. *See* Def.'s Suppl. Br. 1–3; Pl.'s Suppl. Br. 2–3. And their conduct in performing on the contract evinces a general intent to be bound by a lease contract. *See* Def.'s Mot. Dismiss Appx., Ex. A ¶ 5 [3-2]. However, the Court must still determine the content of this contract — namely, whether it contains an FSC.

"The parties' conduct determines the terms of the contract on which the parties' minds met." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App. — Houston [14th Dist.] 2010, pet. denied). "Regardless of whether a contract is based on express or implied promises, mutual assent must be present." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009). In determining whether mutual assent is present, courts consider the communications between the parties, the acts and circumstances surrounding the communications, and any course of dealing between

the parties. *Parker Drilling Co.*, 316 S.W.3d at 75 (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)).

      While the formalities of common-law offer and acceptance are not necessary to find the general existence of a contract here, they are still helpful in evaluating the terms on which the parties agreed. To that point, a long-standing rule of Texas common law is that "an acceptance is effective only if it matches the material terms of the offer to which it responds." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 512 (Tex. 2014) (citing *United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968)). If an attempted acceptance changes or qualifies a material term from the offer, the attempt operates as a rejection and counteroffer. *Id.* at 514. Furthermore, an "offeror is permitted to specify the particular manner in which its offer may be accepted." *Lujan v. Alorica*, 445 S.W.3d 443, 448 (Tex. App. — El Paso 2014, no pet.). And "a party's failure to sign an agreement will render it unenforceable when the terms of the contract make it clear that the party's signature is required to make it binding." *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 715–16 (Tex. App. — Houston [1st Dist.] 2020, no pet.).

      Here, it is clear from the parties' conduct that they never reached mutual assent on the FSC. During the negotiations, the parties disagreed over the forum to be selected. And both parties were plainly aware of the disagreement, as evidenced by Southwest changing the forum to Tulsa (from the original Dallas), and Advantage subsequently changing it back to Dallas. Then, Southwest specifically did not sign or initial each page of Advantage's written draft, which was the stated method of acceptance in Zubbedi's email.

MEMORANDUM OPINION AND ORDER – PAGE 9

Then, even though both parties proceeded to perform on the core of the contract (shipping the landing gear and submitting payments), nothing from this conduct indicates an intent to be bound by the same FSC selecting Dallas.  And given that the negotiations failed to produce any indication of mutual agreement to a selected forum, the Court concludes that the FSC term is not part of the parties' final agreement because they did not reach mutual assent as to that term.  *See Lujan*, 445 S.W.3d at 448–450 (finding parties did not agree to FSC where prospective employee failed to sign employment agreement containing FSC, but still proceeded with the employment relationship); *Aggreko, LLC v. Bronxcare Health Sys.*, 2024 WL 234409, at *5–6 (Tex. App. — Houston [1st Dist.] 2024, no pet.) (mem. op.) (finding parties did not agree to FSC where lessee of equipment did not sign order form containing FSC but still accepted delivery).  Accordingly, the FSC cannot stand as a basis for Advantage's motion to remand.

## B.  Southwest's Removal was Timely

The removal statute provides that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1).  Formal service of process is a necessary condition for the thirty-day clock to begin running.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999).  The statute's "or otherwise" language refers to a situation where the defendant receives formal service of a summons, but not the initial pleading, and later receives a copy of the initial pleading "through service or otherwise."  *See id.*

MEMORANDUM OPINION AND ORDER – PAGE 10

Here, Southwest removed this action on Sept. 17, 2024. Notice of Removal 5. Prior to removal, Advantage made multiple attempts to serve Southwest via its registered agent — David Guzman. Pl.'s Mot. Remand 2. On July 30, 2024, the process server made another unsuccessful attempt at service. *Id.* Ex. 2. Following this attempt, Guzman called the process server and instructed him to serve the receptionist because Guzman did not know when he would be available to receive service. *Id.* The server apparently left the papers with the receptionist, and Advantage subsequently filed a motion for substitute service in the state court on Aug. 13, 2024. *See id.* at 2, 10. The state court did not rule on this motion before Southwest removed the case. *See id.* at 2. On Sept. 9, 2024, Southwest sent Advantage a letter indicating Southwest intended to remove the case. *Id.*

Advantage does not argue that Southwest ever received formal service before removal. Instead, it argues that the clock began to run on July 30, when the papers were delivered to the receptionist. *Id.* at 8, 10. It attempts to distinguish *Murphy Bros.* on the basis that Southwest directed service to the receptionist and then took action on the received documents all while dodging formal service. Pl.'s Remand Reply 6–7 [17]. However, the Court does not find this argument persuasive. The holding of *Murphy Bros.* is clear that formal service of process is a necessary condition before the removal clock begins to run. *See* 526 U.S. at 347–48. And because Southwest did not receive formal service of process before it removed the case, its removal is therefore timely. Accordingly, the Court denies Advantage's motion to remand.

MEMORANDUM OPINION AND ORDER – PAGE 11

## IV.  THE COURT GRANTS SOUTHWEST'S MOTION TO
## DISMISS FOR LACK OF PERSONAL JURISDICTION

Southwest, in its motion to dismiss, argues that this action should be dismissed because Southwest is not subject to personal jurisdiction in Texas.  Def.'s Mot. Dismiss Br. 1.  In response, Advantage argues that the contract's FSC operates as consent to personal jurisdiction.  Pl.'s Resp. 6–9 [8].  However, because the Court has concluded that the FSC is not part of the contract here, and because Southwest does not have minimum contacts with Texas to support personal jurisdiction, the Court grants Southwest's motion and dismisses this case without prejudice.

As an initial matter, the Court concludes that Southwest is not subject to general jurisdiction in Texas.  A corporation (or an LLC) is typically subject to general jurisdiction in "two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business."  *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020).  Southwest is an Oklahoma LLC with its principal place of business in Tulsa, Oklahoma.  Def.'s Mot. Dismiss Appx., Ex. A ¶¶ 2–3.  And there is nothing in the record demonstrating Southwest otherwise has contacts with Texas that are "so 'continuous and systematic' as to render [it] essentially at home" in Texas.  *See Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317); *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (stating it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").  Accordingly, Southwest is not subject to general personal jurisdiction in Texas.

Thus, the Court can exercise personal jurisdiction over Southwest only if Advantage demonstrates the requirements for specific jurisdiction are satisfied.  The Fifth Circuit has articulated a three-step test for specific jurisdiction analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs.*, 768 F.3d at 433 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).  Advantage bears the burden to establish the first two prongs, after which the burden shifts to Southwest to negate the third.  *Id.*

Here, Advantage fails at the first step — it does not establish that Southwest has minimum contacts with Texas.  Indeed, Advantage's entire response to the motion to dismiss focuses on the fact that Southwest "consented" to jurisdiction by way of the contract's FSC.  However, the Court has determined that the FSC is not part of the contract.  And beyond the FSC, the only evidence in the record fails to establish that Southwest had sufficient minimum contacts with Texas to support personal jurisdiction.

First, the fact that Southwest negotiated and subsequently performed on the contract with Advantage, a Texas resident, is not enough on its own to say Southwest purposefully availed itself of Texas law.  *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311–12 (5th Cir. 2007) (noting that "merely contracting with a resident of the forum state does not establish minimum contacts").  Then, in performing the contract, Southwest shipped the landing gear from Oklahoma to a third party in California; it was

MEMORANDUM OPINION AND ORDER – PAGE 13

never sent to Texas.  Def.'s Mot. Dismiss Appx., Ex. A ¶ 5.  And payments on the contract were made to Southwest in Oklahoma.  *Id.*  In addition, Southwest categorically denies that it does any business in Texas, advertises in Texas, or owns any real property in Texas.  *Id.* ¶ 3.  These facts, taken as a whole, do not show that Southwest purposefully availed itself of Texas law.  Accordingly, the Court concludes that Advantage has failed to show that Southwest has sufficient minimum contacts with the State of Texas to subject it to specific personal jurisdiction.

## CONCLUSION

Because the Court finds that the forum-selection clause in this case is not part of the contract, and that Southwest's removal was timely, the Court denies Advantage's motion to remand.  Then, because the Court determines that Southwest is not subject to personal jurisdiction in Texas, the Court grants Southwest's motion and dismisses this case without prejudice.

Signed March 17, 2025.

David C. Godbey
Chief United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 14